**Mark DUCKWORTH, Plaintiff, Appellant,**

v.

**PRATT & WHITNEY, INC., Defendant, Appellee.**

No. 97–2244.

United States Court of Appeals, First Circuit.

Heard May 8, 1998.

Decided July 14, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied August 24, 1998.

Helen Norton, with whom Donna R. Lenhoff, Janet S. Chung, National Partnership For Women & Families, Peter L. Thompson and Law Offices of Ronald Coles, were on brief, for appellant.

Richard G. Moon, with whom Jonathan Shapiro, Melinda J. Caterine, and Moon, Moss, McGill, Hayes & Shapiro, P.A. were on brief, for appellee.

Leif G. Jorgenson, Attorney, United States Department of Labor, with whom Marvin Krislov, Deputy Solicitor of Labor for National Operations, Steven J. Mandel, Associate Solicitor, and William J. Stone, Counsel for Appellate Litigation, were on brief, for United States Secretary of Labor, amicus curiae.

Catherine K. Ruckelshaus, Sara E. Rios, Patricia A. Shiu, Catherine R. Albiston, and Robin Runge on brief for National Employment Law Project, Employment Law Center (a project of the Legal Aid Society of San Francisco), National Council of Jewish Women, United Mine Workers of America, Equal Rights Advocates, Center for Women Policy Studies, Union of Needletrades, Industrial & Textile Employees, Women Employed, American Federation of State, County and Municipal Employees, International Federation of Professional and Technical Engineers, American Federation of Teachers, American Association of University Women, RESOLVE, Service Employees International Union, American Association of Retired Persons, National Women's Law Center, American Civil Liberties Union of Massachusetts, and 9to5, National Association of Working Women, amici curiae.

Ann Elizabeth Reesman, Robert E. Williams and McGuiness & Williams on brief for Equal Employment Advisory Council, amicus curiae.

Loretta M. Smith and New England Legal Foundation on brief for Associated Industries of Massachusetts, Business and Industry Association of New Hampshire, Connecticut Business and Industry Association and Maine Chamber and Business Alliance, amici curiae.

Before LYNCH, Circuit Judge,
CAMPBELL and BOWNES, Senior Circuit Judges.

LYNCH, Circuit Judge.

The facts alleged in this case are simple: that Pratt & Whitney refused to rehire Mark Duckworth because he had a "poor" attendance rating resulting from his fifty-two day absence from work in 1994 caused by a serious health condition, an absence protected by the federal Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–54, and its state counterpart, Maine's Family Medical Leave Requirements, Me.Rev.Stat. Ann. tit. 26, §§ 843–48 (West 1997). Duckworth says the refusal to rehire violated these laws because the employer's decision was based on Duckworth's use of statutorily protected leave.

Duckworth's complaint was dismissed for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). We reverse and reinstate the lawsuit.

## I.

We state the facts as they are alleged in Duckworth's complaint, which we take to be true for the purposes of a motion to dismiss. *See Salois v. Dime Sav. Bank*, 128 F.3d 20, 22 (1st Cir.1997).

Duckworth was employed by a Pratt & Whitney manufacturing facility in North Berwick, Maine from 1980 until December 1994, when he was laid off. Attendant to the layoff, one of Duckworth's former supervisors completed an "Employment Termination Record" sometime around January 6, 1995. The Termination Record had a line entitled "Rehire Status." On that line, the supervisor wrote that Duckworth's attendance was "poor." Nearly two years later, on October 17, 1996, Duckworth unsuccessfully applied to Pratt & Whitney for a job. Duckworth's complaint states that the "poor" attendance rating was the basis for Pratt & Whitney's refusal to rehire him. Duckworth alleges that the "poor" rating resulted from his taking fifty-two days of medical leave in 1994, leave that was protected by the FMLA, and that Pratt & Whitney's refusal to rehire him thus interfered with his FMLA-protected right to take medical leave.

We take it as given that the 1994 leave was covered by the FMLA. Apparently, an accident left Duckworth with a punctured lung and broken ribs, which caused him to be absent from work from June 20, 1994 to August 11, 1994. The effects of those injuries and of the medications he took caused Duckworth to be absent a second time, from August 31, 1994 to September 22, 1994. He was under his physician's treatment throughout. It is also undisputed that Duckworth suffered from a "serious health condition" as defined by 29 U.S.C. § 2611(11) at the time of the absences. Further, Pratt & Whitney concedes that Duckworth was an "eligible employee" within the meaning of § 2611(2) at the time he took leave and that Pratt &

Whitney was a covered "employer" within the meaning of § 2611(4).

## II.

Duckworth brought suit in the United States District Court for the District of Maine in August 1997. He alleged that the employer had willfully discriminated against him for having exercised his FMLA-protected right to take medical leave, in violation of 29 U.S.C. § 2615 and its Maine analogue.[1] That section of the FMLA, entitled "Prohibited Acts," provides:

(a) Interference with rights

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

29 U.S.C. § 2615(a)(1).

Duckworth also relied on a regulation promulgated by the United States Department of Labor (DOL) that makes it clear that employers may not take a prospective employee's past use of FMLA-protected leave into account in hiring decisions. That regulation provides:

An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave.... [E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions....

29 C.F.R. § 825.220(c). Because he is entitled to protection under this regulation, Duckworth says he may bring an action under 29 U.S.C. § 2617(a) to enforce those rights. In this, the DOL agrees with him.

The district court dismissed the action for failure to state a claim on which relief may be granted, basing its reasoning on the provision of the Act creating a private right of action:

---

1. Because we reinstate the action on federal law grounds and there is no independent basis of federal jurisdiction over the state law claims, we do not discuss the Maine statute.

An action ... may be maintained against any employer ... by any one or more employees for and in behalf of—

(A) the employees; or

(B) the employees and other employees similarly situated.

29 U.S.C. § 2617(a)(2). The district court reasoned that because Duckworth had volunteered for a layoff, his claim arose from his status as a prospective employee, not as a current, eligible employee. The district court noted that the enforcement provisions of the Act created a private remedy only for "employees." The district court reasoned that the term "employees" is not ambiguous, but inherently applies only to current employees (thus rejecting DOL's interpretation of the term to include prospective employees), and that Duckworth had no cause of action because he was not a current employee. The court noted that if Congress had intended to include job applicants within the meaning of the FMLA, it could have expressly included job applicants within the statute's coverage, as it did in the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. The federal claim having been dismissed, the court also dismissed, without prejudice, the pendent state claim.

### III.

■ We review the district court's dismissal order de novo. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996).

Although this case is a significant one for individuals and employers affected by the FMLA, it turns on a relatively straightforward and limited question of statutory construction, and then on deference to administrative lawmaking. For the purposes of its

motion to dismiss, Pratt & Whitney essentially concedes that the actions described by Duckworth's complaint may have violated 29 U.S.C. § 2615, which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" protected by the FMLA. But, Pratt & Whitney argues, he has no judicial forum available, only an administrative one.

Pratt & Whitney correctly notes that Congress provided several mechanisms for enforcing the FMLA. First, Congress provided "employees" an express private right of action to enforce the Act. *See* 29 U.S.C. § 2617(a)(2).[2] The Secretary of Labor has authority to bring civil actions against violators. *See id.* § 2617(b). Aggrieved individuals may file an administrative complaint with the DOL. *See id.* § 2617(b)(1).[3] Hence, Pratt & Whitney argues, if Duckworth has a claim at all, he must rely on administrative enforcement because he was not an "employee" at the time of the violation, but only a prospective employee.

■ Thus, the question is whether Duckworth may avail himself of the Act's private right of action, a right of action that is limited to "employees." The district court determined that the Act provides a private remedy only for those employees who suffer adverse action at the time they are employed by the employer in question. This interpretation would exclude prospective employees who complain that they were not hired because they had used FMLA-protected leave in the past, as well as former employees whose previous employer retaliates against them for using FMLA-protected

---

**2.** Because Congress created an express private remedy, the difficult questions raised by the "implied right of action" doctrine are not presented by this case. *Cf. Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

**3.** The district court was of the view that the Secretary could not bring an action on behalf of Duckworth because the Secretary could only seek enforcement as to "affected employees." That view assumes no ambiguity in the term "employees," a view we reject below.

Likewise, Pratt & Whitney argues that the DOL regulations do not protect Duckworth because its regulations under 29 U.S.C. § 2617, the enforcement section of the FMLA, refer only to "employees," unlike its regulations under § 2615, the prohibited acts section. Again, this argument assumes that the term "employees" inherently refers only to current employees. The Secretary of Labor's regulations, read together, clearly assume that the term "employees" includes prospective and former employees who complain of retaliation, and do not contemplate separate remedial mechanisms for separate classes of employees.

leave by, for example, giving a negative reference to a future employer.[4]

We do not write on a clean slate. The Act delegates to the Secretary of Labor broad authority to "prescribe such regulations as are necessary to carry out" the Act. 29 U.S.C. § 2654. The regulations on which Duckworth relies were promulgated pursuant to the requirements of notice-and-comment rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553. Under those regulations, Duckworth is an "employee" who can sue for violations of 29 U.S.C. § 2615. Pratt & Whitney does not challenge the procedural validity of the rulemaking process.

The Secretary of Labor argues that the term "employees" is ambiguous, not inherently limited to current employees, and that its regulations extending the Act's protection to prospective and former employees are entitled to deference. *See Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see also* 29 C.F.R. § 825.220(c). The regulations were an exercise of the Secretary's delegated authority and were adopted with the participation of the public, and thus deference to the Secretary's interpretation is properly invoked.[5]

"Under the formulation now familiar, when we examine the Secretary's rule interpreting a statute, we ask first whether 'the intent of Congress is clear' as to 'the precise question at issue.'" *Regions Hosp. v. Shalala,* ––– U.S. –––, –––, 118 S.Ct. 909, 915, 139 L.Ed.2d 895 (1998) (quoting *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778). We use traditional tools of statutory construction to determine if Congress' intent is clear as to that precise issue. *See id.; Goncalves v. Reno,* 144 F.3d 110, 127–28 (1st Cir.1998). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. "If the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, we give that reading controlling weight, even if it is not the answer 'the court would have reached if the question initially had arisen in a judicial proceeding.'" *Regions Hosp.,* 118 S.Ct. at 915 (quoting *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. 2778).

■ Under the first step of the *Chevron* analysis, we examine the statutory language at issue using our traditional tools of statutory construction. That requires us to determine whether "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Id.* We employ that process to determine whether Congress has spoken, for "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778.

■ The district court determined that the term "employees" has an inherent "plain meaning." The plain meaning seen by the district court was that "employees" means "current employees." Such a definition excludes prospective employees, and, necessarily, former employees. If, by choosing the word "employees," Congress had manifested an unambiguous intent to exclude Duck-

---

4. Plaintiffs and amici note that the district court's decision limiting the FMLA's private right of action to "current employees" could also be read to require that plaintiffs must be employed at the time suit is filed, an interpretation that presents obvious problems. We do not believe this is what the district court meant and defendants have not urged us to affirm the district court on that basis.

5. The Supreme Court has suggested that, in cases involving an implied right of action created by the courts, courts have a "measure of latitude" in fashioning remedies. *Gebser v. Lago Vista Indep. Sch. Dist.,* ––– U.S. –––, 118 S.Ct. 1989, 1996–97, 141 L.Ed.2d 277 (1998) Because this case involves an express right of action created by Congress and a delegation by Congress of rule-making authority, we do not consider whether, or how, this principle affects the *Chevron* analysis.

worth's claim from the Act's coverage, we would agree with the district court and would be bound to reject the Secretary's interpretation. No deference is due the administrative agency's interpretation if it conflicts with unambiguous language. *See Strickland v. Commissioner, Me. Dep't of Human Servs.,* 48 F.3d 12, 16 (1st Cir.1995). Whether the statute is ambiguous is a question of law for the court to decide,[6] and it is one which we must review de novo. *See id.* at 16–17. We think the district court's determination that the term "employees" is unambiguous, always meaning "current employees," is in error for several reasons.

First, courts have consistently regarded the term "employees," as used in other federal employment statutes, as not inherently limited to current employees. Cases involving such statutes are instructive, although not determinative. *See Serapion v. Martinez,* 119 F.3d 982, 985 (1st Cir.1997) ("We regard Title VII, ADEA, ERISA, and FLSA as standing *in pari passu* and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another.")

Second, in *Robinson, supra,* a case raising a very similar issue under another employment statute, the Supreme Court made clear that the term "employees," as used in the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e–3(a), includes former employees. The rationale of *Robinson* applies here. In *Robinson,* the plaintiff was fired and he filed a charge with the Equal Employment Opportunity Commission (EEOC) saying that his firing was motivated by race discrimination. *See* 117 S.Ct. at 845. The plaintiff then applied for a job at another company, and his former employer gave a negative reference. *See id.* The plaintiff alleged this poor reference was in retaliation for his

EEOC charge, and filed suit. The district court dismissed the lawsuit on the ground that the plaintiff was not an "employee" at the time the adverse action was taken, and the court of appeals affirmed. A unanimous Supreme Court reversed.

The Supreme Court reasoned that the word "employee" does not have some "intrinsically plain meaning," *id.* at 847 n. 4, that is limited "to those having an existing employment relationship with the employer in question," even though that argument may seem plausible "at first blush." *Id.* at 846. Canvassing various federal statutes, *Robinson* noted that Congress has not used the term "employee" with precision, but rather has used the term, at various times, to refer to both former and prospective employees. *Id.* at 846–47; *see also NLRB v. Town & Country Elec., Inc.,* 516 U.S. 85, 116 S.Ct. 450, 133 L.Ed.2d 371 (1995) (upholding the NLRB's determination that the term "employees" in the National Labor Relations Act (NLRA) applies to prospective employees who were paid union organizers); *Passer v. American Chem. Soc'y,* 935 F.2d 322, 330–31 (D.C.Cir. 1991) (term "employees" in Age Discrimination in Employment Act (ADEA) includes former employees). Thus, absent an express "temporal qualifier," such as "current," *Robinson,* 117 S.Ct. at 846, Congress' use of the word "employees" does not inherently exclude former and prospective employees.

Third, an example of ambiguity, thus counselling deference to the agency, comes from the definitional section enacted by Congress. The FMLA provides that the definition of "employee" in the FLSA, 29 U.S.C. § 203(e), is also applicable to the FMLA. *See* 29 U.S.C. § 2611(3). That definition, "any individual employed by an employer," 29 U.S.C. § 203(e), (which is subject to certain exceptions not relevant here) does not make the

---

**6.** Thus, strictly speaking, *Chevron* deference does not come into play until the statute's language has been parsed, using "traditional tools of statutory construction," to determine whether it is unambiguous. *See Strickland,* 48 F.3d at 16–17. However, this does not mean administrative interpretations are never relevant in construing the statute during the first step of the *Chevron* analysis. If, for example, Congress chooses a term that has a well-established meaning as some administrative agency or court has previously de-

fined it, the court should look to that agency or judicial definition in construing the meaning of the statute. *See Bragdon v. Abbott,* — U.S. —, 118 S.Ct. 2196, 2201–02, 141 L.Ed.2d 540 (1998). In so doing, the court does not "defer" to the agency's definition, but to Congress' intent in choosing that term. Here, Congress chose to use a definition of "employee" taken from the Fair Labor Standards Act (FLSA), a term which has received judicial construction, the significance of which we discuss below.

term any less ambiguous. In *Robinson,* the Supreme Court found that the identical definition contained in Title VII did not add anything to "employee" which made it less ambiguous. *See* 117 S.Ct. at 847; *see also Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) ("ERISA's nominal definition of 'employee' as 'any individual employed by an employer' is completely circular and explains nothing." (Citation omitted.)).

■ Pratt & Whitney argues that, although the term "employed" could mean both "*is* employed" or "*was* employed," *see Robinson,* 117 S.Ct. at 847 (noting this ambiguity), it cannot mean "will be employed," and so the use of the FLSA definition at least excludes prospective employees. However, the FMLA's use of the FLSA definition of "employee" was plainly meant to incorporate the FLSA's list of exceptions, *see* 29 U.S.C. § 203(e), not to exclude prospective employees from the FMLA's coverage. Indeed, the FLSA definition of "employee" has been held by one circuit court to apply to prospective employees, *see Dunlop v. Carriage Carpet Co.,* 548 F.2d 139 (6th Cir.1977), and has been described by the Supreme Court as "exceedingly broad," *Tony & Susan Alamo Found. v. Secretary of Labor,* 471 U.S. 290, 295, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985); *see also United States v. Rosenwasser,* 323 U.S. 360, 362, 65 S.Ct. 295, 89 L.Ed. 301 (1945) ("A broader or more comprehensive coverage of employees within the stated categories [in the FLSA] would be difficult to frame.") "Congress' repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory [and judicial] interpretations." *Bragdon v. Abbott,* —— U.S. ——, 118 S.Ct. 2196, 2201–02, 141 L.Ed.2d 540 (1998); *see also Goncalves,* 144 F.3d at 132–33 (noting that Congress is presumptively aware of existing judicial or administrative interpretations). Moreover, the legislative history reveals that Congress, at the time it enacted the FMLA, was aware of the breadth of the FLSA definition and purposely chose to adopt that definition. *See* S.Rep. No. 103–3, at 22 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 25 (noting that "[t]his definition is broadly inclu-

sive"); *Bragdon,* 118 S.Ct. at 2208 (noting that the legislative history revealed Congress' awareness of the breadth of the definition of "handicap" in the Rehabilitation Act when it chose to include that definition in drafting the ADA).

Fourth, our reading of other statutory provisions does not eliminate the ambiguity. In providing various readings of statutory terms below, we are most emphatically not ruling on whether the particular readings are correct, only that the variety of possible readings demonstrates ambiguity. And that ambiguity sets the stage for deference to reasonable administrative interpretation. In this context, we address one of Pratt & Whitney's strongest arguments, that Congress has, in some statutes, distinguished "job applicants" from "employees," expressly providing that the statute's protection extends to both. *See, e.g.,* 42 U.S.C. § 12112(b)(1) (providing that, in the ADA, "the term 'discriminate' includes limiting, segregating or classifying a job applicant or employee" in a way that adversely affects a disabled individual's opportunities). Congress could have done so here, under the FMLA, but did not. That Congress could have singled out "job applicants" for express coverage does not mean it clearly intended to exclude job applicants from the FMLA. Indeed, much prior judicial interpretation of analogous statutes could lead Congress to conclude that such a level of precision is not required, or at least that it could, by choosing to use an open-ended term like "employee," entrust that policy choice to the agency. For example, the NLRA does not explicitly include "job applicants" within its definition of "employees," *see* 29 U.S.C. § 152(3), but the Supreme Court has long held that term to include prospective employees, *see Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 185–86, 61 S.Ct. 845, 85 L.Ed. 1271 (1941), and has recently upheld a Board determination that the term applies to prospective employees who were paid union organizers, *see Town & Country,* 516 U.S. at 87, 116 S.Ct. 450. In the FMLA, Congress did not provide separate protection for "job applicants" and for "employees." The Supreme Court has repeatedly observed that the word "employee"

"is not treated by Congress as a word of art having a definite meaning" that would, for example, exclude prospective or former employees. *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111, 124, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) (internal quotation marks and citation omitted).

Pratt & Whitney next argues that, given the "specific context in which [the term 'employees'] is used," *Robinson,* 117 S.Ct. at 846, the term can only mean current employees. This, Pratt & Whitney argues, is the express "temporal qualifier" that makes the term "employees" in 29 U.S.C. § 2617 unambiguous, and thus makes the outcome of *Robinson* not controlling. Paragraph (1) of the section at issue makes "[a]ny employer who violates section 2615 of this title ... liable to any *eligible* employee affected for damages ... and for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1) (emphasis supplied). Paragraph (2) then provides that "[a]n action to recover the damages or equitable relief prescribed in paragraph (1) may be maintained against any employer ... by any one or more employees...." *Id.* § 2617(a)(2). An "eligible" employee is one who has worked for at least twelve months and for at least 1,250 hours of service. *See id.* § 2611(2). Pratt & Whitney argues "employees" cannot mean prospective employees because such employees are not yet eligible, and it cannot mean former employees because such employees are no longer eligible.

Pratt & Whitney's argument necessarily assumes that the employee must be "eligible" at the time of the adverse action, rather than at the time the employee wishes to take leave. This reading is far from mandated by the statute's language, and strikes us as unlikely. The statute makes any employer "liable to any eligible employee affected" by a violation of the Act. This language, read naturally, means that an employee must be "eligible" at some time and that he or she must

have been "affected" by the employer's action. The statute does not make clear whether an employee is "affected" by an adverse action at the time the action was taken or at the time he or she wanted to take leave, or indeed whether there is any required temporal connection between "eligible" and "affected." In Duckworth's case, although Pratt & Whitney (arguably) took its adverse action after Duckworth left employment,[7] its action was, Duckworth argues, one designed to punish him for his past protected leave-taking (as a former eligible employee) or to prevent him from future protected leave-taking (as a prospective eligible employee). Under this interpretation, Pratt & Whitney's actions "affected" Duckworth and Duckworth was eligible when he took his leave.

█ Other language in the subsection, providing for equitable remedies, suggests a different reading: that the requirement of eligibility applies when the employee wishes to take leave, not when the employer takes an adverse action. The remedies include "employment, reinstatement, and promotion." These remedies are inconsistent with a definition of "employee" which applies only to current employees. Instead, each of the three remedies most naturally refers to employees who are in different temporal circumstances—one "promot[es]" a current employee, one "reinstate[s]" a former employee, and one "employ[s]" a prospective employee. *Cf. Robinson,* 117 S.Ct. at 847 (making a similar observation). Pratt & Whitney argues that reinstatement could be limited to those former employees who suffered the adverse action at a time they were still employed, and that the remedy of "employment" could also be limited to such former employees. But that interpretation is certainly not the only plausible reading, and suffers from its own problems. It renders the remedy of "employment" in 29 U.S.C. § 2617(a)(1) essentially the same as the statutory remedy of "reinstatement" in that sub-

---

7. Duckworth argues on appeal that he was still technically on the payroll at the time of the negative notation about his "rehire status." Duckworth did not make this argument to the district court. We pass over the complicated set of issues concerning whether the complaint may

fairly be said to encompass such a claim and instead deal with the employer's argument on its own terms, terms which assume that the employee had been terminated before the negative rating was given.

section, making the terms redundant. It is a " 'cardinal principle of statutory construction that it is our duty to give effect, if possible, to every clause and word of a statute.' " *Goncalves,* 144 F.3d at 129 (quoting *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 1166, 137 L.Ed.2d 281 (1997)).

We regard the statute as, at best, ambiguous concerning the temporal scope of the term "employees." The statute does not plainly limit the term to current employees. We also find nothing in the legislative history evincing a "clearly expressed legislative intention contrary to the statutory language" that would resolve the ambiguity in Pratt & Whitney's favor. *United States v. Rivera,* 131 F.3d 222, 226 (1st Cir.1997) (en banc) (internal quotation marks and alterations omitted). Finally, nothing in the "broader context of the statute as a whole," *Robinson,* 117 S.Ct. at 846, provides support for Pratt & Whitney's position that there is an unambiguously expressed intent of Congress to read the statute as it poses.

■ Consequently, the second stage of the *Chevron* analysis comes into play: whether the Secretary's reading of the statute is a reasonable one. *See Massachusetts v. FDIC,* 102 F.3d 615, 622 (1st Cir.1996). The statute, read as a whole and in light of its purposes, leads to the conclusion that the Secretary's broad definition of "employees" is reasonable.

First, the provision at issue, the enforcement section, makes any employer "who violates section 2615 of this title" liable to the affected employee in a civil action. 29 U.S.C. § 2617(a)(1). Section 2615 provides that it is unlawful "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided by the FMLA, as well as to deny leave. *Id.* § 2615(a)(1). That section also makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. *Id.* § 2615(a)(2).[8] Finally, that section provides specific protection to "any individual" who gives any information in a proceeding "under or related to" the FMLA. *Id.* at § 2615(b). None of these provisions are limited to current, eligible employees; instead, they use terms like "any individual." Of course, the statute's private right of action is limited to "employees," but that term is not inherently limited to current employees, and the scope of the "prohibited acts" section strongly suggests that it should not be so limited.[9]

Indeed, the fact that § 2615 uses the term "any individual" is strong evidence that Congress drew a distinction when drafting the FMLA between the substantive right of leave and the right under the anti-retaliation provision to be free from employer interference with FMLA-protected leave rights. Such interference, Congress implicitly recognized, could be directed at individuals (such as prospective and former employees, or witnesses in FMLA proceedings) who might not be presently eligible for FMLA leave. Although only "eligible employees" have substantive rights, it is unlawful for an employer to interfere with the rights of "any individual" that are protected under the Act.

Other sections of the FMLA are likewise consistent with the Secretary's interpretation. For example, covered employers are required under the FMLA to post a notice setting forth the FMLA's statutorily mandated leave policy "in conspicuous places on the premises of the employer where notices to employees and applicants for employment are customarily posted." *Id.* § 2619. It would be strange, as the Secretary notes, to require job applicants to be informed of

---

8. The FMLA's "opposition" clause is "derived from ... Title VII ... and is intended to be construed in the same manner." S.Rep. No. 103–3, at 34 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 36. Title VII's opposition clause is broad and would, as the Senate Report recognizes, prohibit the sort of adverse action in hiring of which Duckworth complains.

9. Pratt & Whitney argues that 29 U.S.C. § 2615, the "prohibited acts" section, only prohibits acts

that are designed to interfere with substantive rights which are protected by the Act, and that Duckworth does not have a substantive leave right as he is not an "eligible employee." Pratt & Whitney's argument is misdirected because Duckworth is not claiming he is presently eligible for medical leave, but rather that Pratt & Whitney's actions are designed to interfere with or penalize his use of leave at a time when he was, or will be, eligible.

rights if the employer is free to punish prospective and new employees for asserting such rights.

Similarly, the prelude "findings and purposes," contained in the FMLA at § 2601, say that "employment standards that apply to one gender only have serious potential for encouraging employers to discriminate against employees and applicants for employment who are of that gender." This was Congress' rationale for mandating gender-neutral leave for family and medical purposes rather than mandating maternity leave for women who had recently given birth. It would be inconsistent with Congress' concern about possible discrimination against prospective employees who intend to take leave to limit the Act's private remedies to current employees.[10]

The Secretary of Labor notes a number of effects of the position taken by Pratt & Whitney which would undermine the stated purposes of the statute. Under Pratt & Whitney's interpretation, an expectant mother who had worked for her employer for eleven months could be fired from her job if she notified her employer of her need for leave several months later, at a time when she would be an "eligible" employee under the FMLA. Under Pratt & Whitney's interpretation, the employer would be permitted to fire her even though it could not deny the employee leave once she had been employed for twelve months. Such a result, in the Secretary's view, would conflict with the Act's basic purpose of enhancing job security by protecting the right of eligible employees to take leave. Pratt & Whitney's reading would also foster a perverse incentive to fire new employees or to refuse to hire prospective employees who were seen as posing a risk of exercising their rights under the FMLA, such as women of child-bearing age, frustrating the Act's basic purpose of "minimiz[ing] the potential for employment discrimination on the basis of sex by ensuring generally that leave is available ... on a gender-neutral basis." *Id.* § 2601(b)(4).

Pratt & Whitney's interpretation would also provide less protection for new employees or applicants who notify their employers of a need for future leave than those who conceal a need for leave, thus frustrating the implementation of the Act "in a manner which accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3). It would also conflict with another section of the Act requiring an employee to give thirty days' notice for parental leave, if practicable. *See id.* § 2612(e). All of these considerations reinforce the reasonableness of the Secretary's interpretation.

■ In light of Congress' purposes in enacting the FMLA, the agency's construction is a permissible one, i.e., one which "fills a gap or defines a term in a reasonable way...." *Regions Hosp.*, 118 S.Ct. at 915. Congress enacted the FMLA " 'to help working men and women balance the conflicting demands of work and personal life.' " *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 158–59 (1st Cir.1998) (quoting *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir.1997)). The FMLA was Congress' response to what it considered significant social problems affecting families, including " 'inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods.' " *Id.* (quoting 29 U.S.C. § 2601(a)(4)). The Act does so by establishing a minimum leave standard which requires all covered employers to permit eligible employees to take up to twelve weeks of unpaid leave for certain family or medical purposes. *See id.* at 159–60; *see also* S.Rep. No. 103–3, at 4 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 6–7 ("The [Act] is based on the same principle as the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment.").

As both Duckworth and the Secretary of Labor persuasively argue, the achievement of these objectives would be frustrated by adopting Pratt & Whitney's interpretation.

---

**10.** Congress' use of the term "job applicants" in one part of an employment statute "does not serve to confine, by negative inference, the temporal scope of the term 'employees' " in some other part. *Robinson*, 117 S.Ct. at 848. Congress is not required to use language so precisely.

That interpretation would permit an employer to evade the Act by blacklisting employees who have used leave in the past or by refusing to hire prospective employees if the employer suspects they might take advantage of the Act. *See Robinson,* 117 S.Ct. at 848–49 (deferring to EEOC's concern over potential retaliation in defining "employee" to include former employees); *Town & Country,* 516 U.S. at 90, 116 S.Ct. 450 (1995) (noting that "the Board needs very little legal leeway here to convince us of the correctness of its decision" extending the term "employee" in the NLRA to include prospective employees who were also union organizers).

Pratt & Whitney's concerns, echoed by amici business groups, nonetheless are not without force. They are concerned that the FMLA not be interpreted as establishing a special protected class of "FMLA leave-takers" in which any adverse action is presumed to be the result of ulterior motives. This opinion does not lead to that result.[11] Duckworth's complaint states that it was his use of FMLA-protected leave which caused Pratt & Whitney to reject his application for employment. To prevail, Duckworth will have to convince the trier of fact that Pratt & Whitney would have hired him if he had not taken FMLA-protected leave, i.e., that the reason it refused to hire him was because of his use of FMLA-protected leave in the past.

The Secretary of Labor's interpretation of the FMLA is certainly within the permissible range of policy options which Congress delegated to the agency. If the regulations, in practice, prove unduly burdensome to employers, employers may seek to have the Department of Labor revise the regulations or seek relief from Congress, which expressly delegated to the agency such policy choices.

Because Duckworth's complaint states a claim upon which relief may be granted, we *reverse* the district court's judgment and *remand* the case for further proceedings con-

sistent with this opinion. Costs are awarded to Duckworth.

---

**11.** The FMLA is not the first employment statute presenting the sorts of concerns the business community fears. The district courts are well-equipped to sort out those claims that are sub-

stantial from those in which the plaintiff has failed to establish a "genuine issue of material fact" requiring trial. *See* Fed.R.Civ.P. 56. *See, e.g., Hodgens,* 144 F.3d 151.