Kevin P. BEATTY and Cynthia L.
Beatty, Plaintiffs, Appellants,

v.

MICHAEL BUSINESS MACHINES
CORP., Defendant, Appellee.

No. 98–1886.

United States Court of Appeals,
First Circuit.

Heard Feb. 2, 1999.

Decided April 20, 1999.

J. Michael Conley with whom Conley Haley & Champion was on brief for appellant.

Tracy D. Hill, with whom Harold J. Friedman and Friedman Babcock & Gaythwaite, were on brief for appellee.

Before SELYA and STAHL, Circuit Judges, and SHADUR,* Senior District Judge.

STAHL, Circuit Judge.

Plaintiffs-appellants Kevin and Cynthia Beatty appeal judgments entered following jury verdicts in favor of defendants-appellees Michael Business Machines ("MBM") and Ideal–Werk. Plaintiffs appeal only the verdict in favor of MBM, challenging the district court's jury instructions and aspects of the special verdict forms. Because plaintiffs failed to preserve their appellate issues and no plain error appears in the record, we affirm.

## I.

In 1984, Kevin Beatty's employer, the Casco Northern Bank (the "Bank"), purchased a model 4104 Ideal–Werk "Destroy–It" paper shredder (the "shredder") from MBM, the sole distributor of Ideal–Werk shredders in the United States. The Bank made several modifications to the shredder over the next few years, including removal of the conveyor belt that funneled paper into the blade, replacement of the 4104 blade with a blade from a different model shredder (a 4104A shredder), installation of a toggle switch, removal of the screws holding the shredder's cover in place, and attachment of a handle to the now-unattached cover.

Independent service technician Ned Boxer made some of the modifications, including the installation of the 4104A blade and the removal of the conveyor belt. Boxer testified that he called MBM when the 4104 blade was beyond repair, and that an MBM employee told him that 4104 blades were no longer being manufactured. Thus, he had to replace the 4104 blade with a 4104A blade, which was not designed to work with the conveyer belt. MBM denies giving this advice and notes that the 4104 blades were never discontinued.

In any event, the lack of a conveyer belt to funnel paper into the blade caused the shredder to jam frequently. Because of the repetitive jams, an unknown Bank employee removed the screws holding the protective cover on the machine and attached a handle made of rubber bands and paper clips to the cover. This modification allowed employees to remove the cover more easily to clear the jams. Boxer told various Bank employees that the cover's removal was dangerous and replaced the screws each time he serviced the machine, but the employees continued to remove them.

On April 12, 1993, Kevin Beatty was using the shredder to shred documents at the Bank. When the shredder jammed, without stopping the machine, Beatty removed the top cover and then reached across to hit the stop button. As he did this, his right hand became stuck in the shredder, causing him to sustain serious injuries.

Kevin Beatty sued defendants for strict liability, negligence, breach of implied warranty of merchantability, and breach of implied warranty for a particular purpose. Cynthia Beatty sued defendants for loss of consortium. After plaintiffs presented their case, defendants moved for judgment as a matter of law pursuant to Fed. R.Civ.P. 50. In support of their motions, defendants argued, *inter alia*, that the substantial modifications to the shredder by Boxer and Bank employees constituted efficient, intervening causes of Kevin Beat-

* Of the Northern District of Illinois, sitting by   designation.

ty's injuries that insulated them from liability. The district court decided to hold its decisions on the motions until the completion of defendants' presentation. After defendants rested, the district court granted the motion as to Kevin Beatty's claim that Ideal–Werk had breached an implied warranty of fitness for a particular purpose. The court also granted the motions as to Kevin Beatty's claim for intentional infliction of emotional distress. The remaining claims went to the jury, though the court warned plaintiffs that their case was not a good one.

The night before closing arguments, the parties conferenced in chambers to discuss the jury instructions and the proposed special verdict forms. There is no record of this conference, and the parties disagree to some extent as to what actually occurred. Defendants argue that the court was undecided as to whether it would give an efficient, intervening cause instruction with respect to the claims against MBM, while plaintiffs assert that the court told them it was very unlikely that it would so instruct. Whatever was said, the district court ultimately decided to instruct the jury regarding efficient, intervening cause with respect to Kevin Beatty's claims against both defendants. Plaintiffs maintain that they were given no real advance notice of this change; defendants say that the court clerk met them at the door and showed them the intervening cause instructions.

In any case, while plaintiffs admit that the clerk did give both parties draft copies of the jury instructions and the special verdict forms (both of which indicated— although the MBM verdict form was muddled because of the error discussed in the next paragraph—that efficient, intervening cause would also be at issue in Kevin Beatty's claims against MBM) upon their arrival at the courthouse, they state that they did not receive any other notice of the court's change of heart. Plaintiffs further claim that they had only a moment to

review the instructions and verdict forms prior to closing arguments, and that they thus failed to appreciate that the court now intended to instruct on efficient, intervening cause with respect to MBM.

Further complicating matters, the draft of special verdict Form 2 provided to plaintiffs before their closing argument contained an unfortunate typographical error. Question 4 on both Form 1 (the separate verdict form as to Ideal–Werk) and Form 2 (the separate verdict form as to MBM) asked whether the conduct of the Bank, Boxer, or Kevin Beatty constituted an intervening act that broke the chain of causation, an inquiry that would not belong in Form 2 at all if the issue of intervening cause were not indeed relevant to Kevin Beatty's claims against MBM as well as against Ideal–Werk. But Form 2 mistakenly told the reader to skip Question 4 and go to Question 5 if the reader had answered "yes" to Questions 1, 2, or 3. Questions 1, 2, and 3 asked, respectively, whether MBM was negligent in supplying the 4104A blade, whether MBM had breached the implied warranty of merchantable quality with regard to that blade, and whether MBM had breached the implied warranty of reasonable fitness for a particular purpose with regard to the blade. Plaintiffs claim that they did not read Question 4 because their case against MBM depended on a "yes" answer to Questions 1, 2, or 3, and because the Form 2 they were given instructed them to skip to Question 5 if Questions 1, 2, or 3 were answered "yes."[1] Thus, for this additional reason, plaintiffs contend that the special verdict form failed to provide them with notice that the court intended to instruct the jury on efficient, intervening cause with respect to the claims against MBM.

During closing arguments, defendants discussed all of the Bank's modifications to the machine. Defendants did not distinguish between Ideal–Werk and MBM, but referred to both throughout. Plaintiffs did

1. The court apparently corrected the typographical error and gave the jury a corrected form without bringing the error to the parties' attention.

not object to defendants' closing arguments and, in rebuttal, argued that the toggle switch was irrelevant to the accident. Plaintiffs did not address the issue of intervening cause as to MBM during their closing argument.

After closing arguments, the district court instructed the jury. The court told the jury that, because of the doctrine of joint and several liability, both defendants were liable if there was a defect in the shredder's design. It further instructed that only MBM could be found liable for the subsequent sale of the 4104A blade or for breach of the implied warranty of fitness. The court then explained the concept of efficient, intervening cause to the jury. Here, the court explicitly referred to the manufacturer and the distributor. The court switched between referring to "both defendants" and Ideal–Werk alone, but clearly referred to both MBM and Ideal–Werk throughout the instructions. Next, the court discussed the special verdict forms. Form 1 covered the sale of the shredder in 1984, while Form 2 covered the sale of the replacement heads, and thus pertained to the claims against MBM alone. The court read through Form 1 in detail, including Question 4, which was the intervening cause instruction. The court then reviewed Form 2 in less detail. Yet the court did tell the jury that the forms were the same but for the first three questions, which it read aloud. Finally, the court specifically told the jury to "go to Question 4" if it answered "yes" to Questions 1, 2, or 3 on both forms. As we have observed, the court did not explicitly point out the typographical error to counsel, see supra note 1, but it did read the corrected instruction on Form 2 aloud. When asked

for objections to the forms, plaintiffs' counsel not only failed to object, but also commented that the forms were "excellent."

During its deliberations, the jury had a question about efficient, intervening cause. With the parties present, the district court instructed the jury on the concept again, stating several times that the efficient, intervening cause doctrine was applicable to MBM. When the court asked for objections, plaintiffs again answered that they were satisfied.

After deliberating, the jury returned verdicts for defendants on both forms. The jury had answered "yes" to the first three questions on Form 2, i.e., that MBM was negligent, that it had breached the implied warranty of merchantable quality, and that it had breached the implied warranty of reasonable fitness. But the jury also answered "yes" to Question 4, which asked if the Bank's conduct, Boxer's conduct, or Beatty's conduct constituted an efficient, intervening act. Because it answered "yes" to Question 4, the jury found that MBM was not liable per its instructions. The district court entered judgments for defendants and this appeal followed.

## II.

Plaintiffs contend that the evidence was insufficient to warrant the introduction of the issue of efficient, intervening cause into their case against MBM. Plaintiffs further argue that their failure to object to the portions of the jury instructions and verdict forms that erroneously discussed the concept should be forgiven because of the irregularities surrounding the court's decisionmaking process.[2] We

2. In their appellate brief, plaintiffs allude to several additional problems with the district court's jury instructions. They generally suggest that the instructions confused events between defendants on issues of negligence, breaches of warranties, and causation; confused the jury about the duties of a supplier; contained too many events and actors; and blurred the distinction between negligence and product liability. While plaintiffs did

make one convoluted objection to the instructions below, none of these arguments appears to have been specifically advanced before the district court. Our review of these arguments would thus be for plain error, see supra at 118–19, which we do not detect.

In any event, these arguments are entirely undeveloped on appeal. This constitutes an independent ground for rejecting them. See,

reject the latter argument and decline to reach the former.

 Fed.R.Civ.P. 51 requires a party to object to an instruction "before the jury retires ... stating distinctly the matter objected to and the grounds of the objection." Silence after jury instructions "typically constitutes a waiver of any objections" for purposes of appeal. *Putnam Resources v. Pateman*, 958 F.2d 448, 456 (1st Cir.1992). Our standard of review thus differs depending on whether the issue was preserved. "If a party complies with Rule 51, then the 'harmless error' standard of Rule 61 governs ... the appellate court's consideration of any request for relief based on the alleged error." *Scarfo v. Cabletron Sys. Inc.*, 54 F.3d 931, 939 (1st Cir.1995). But if a party does not comply with Rule 51, the issue is not preserved, and we review only for "plain" error. *See Moore v. Murphy*, 47 F.3d 8, 11 (1st Cir.1995). "The object of this rule is to afford the trial judge an opportunity upon second thought, and before it is too late, to correct any inadvertent or erroneous failure to charge." *Marshall v. Nugent*, 222 F.2d 604, 615 (1st Cir.1955).

Plaintiffs did not comply with Rule 51 in this case. Although plaintiffs argue that they did not have enough notice of the court's intention to give an efficient, intervening cause instruction with regard to the case against MBM, the record belies their claim. Indeed, the record shows that plaintiffs had numerous occasions to object. The district court advised both parties during its instructions that the doctrine of efficient, intervening cause applied to both the manufacturer and the distributor. Moreover, the district court reviewed the special verdict forms in sufficient detail that counsel should have been aware that the draft special verdict Form 2 distributed just before closing arguments contained a typographical error. Finally, the court's response to the jury's question during deliberations made very clear its view that the doctrine of intervening cause applied to the claims against MBM. Through it all, plaintiffs remained silent. Thus, we review only for plain error.

 The plain error exception " 'should be applied sparingly and only in exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice.' " *Wells Real Estate v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 809 (1st Cir.1988) (quoting *Nimrod v. Sylvester*, 369 F.2d 870, 873 (1st Cir.1966)). The exception " 'should be confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Morris v. Travisono*, 528 F.2d 856, 859 (1st Cir.1976) (quoting 9A C. Wright & A. Miller, *Federal Practice and Procedure*, § 2558, at 675 (1971)). This is not such a case. We have reviewed the record with care, and we are doubtful that the court's decision to give an intervening cause instruction with respect to the claims against MBM can be regarded as an abuse of discretion. *See United States v. Smith*, 145 F.3d 458, 460 (1st Cir.1998)(the decision whether the evidence warrants a particular instruction is committed to the trial court's discretion). But even if it can be so regarded, nothing about the putative error even remotely calls into question the fairness, integrity, or public reputation of judicial proceedings. Along these lines, we note that plaintiffs do not argue that the alleged error was "plain"; they only contend that their failure to object should be excused.

### III.

For the reasons set forth above, we *affirm* the judgment below in all respects.

***Affirmed.* Costs to appellee.**

---

*e.g., United States v. Bongiorno*, 106 F.3d 1027, 1034 (1st Cir.1997) ("We have steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation.").