USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1100

 NEO GEN SCREENING, INC.,

 Plaintiff, Appellant,

 v.

 NEW ENGLAND NEWBORN SCREENING PROGRAM,
 d/b/a NEW ENGLAND REGIONAL NEWBORN SCREENING PROGRAM,
UNIVERSITY OF MASSACHUSETTS, UNIVERSITY OF MASSACHUSETTS MEDICAL 
 CENTER, HOWARD KOH, RALPH TIMPERI,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. George A. O'Toole, Jr., U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Lipez, Circuit Judge.
 
 
 
 
 Kenneth P. McKay with whom Law Offices of K. Patrick McKay was
on brief for appellant.
 Jane L. Willoughby, Assistant Attorney General, with whom
Thomas F. Reilly, Attorney General, was on brief for appellees.

July 14, 1999

 
 
 BOUDIN, Circuit Judge. The present appeal arises out of
a federal antitrust case dismissed by the district court on the
ground that it was barred by the Eleventh Amendment. We assume to
be true, for purposes of this appeal, the facts as alleged in the
complaint. Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1, 3 (1st
Cir. 1998). However, the district court also considered, as do we,
uncontroverted facts furnished by affidavit pertaining to the
status of the defendants under the Eleventh Amendment.
 The plaintiff-appellant in this case is Neo Gen
Screening, Inc., a private, for-profit Pennsylvania corporation
whose business is the medical screening of newborn children. In
Massachusetts, as elsewhere, newborns must be tested for specified
diseases, some of which can be remedied if promptly detected. 
Mass. Gen. Laws ch. 111, 4E, 110A; see also id. 3, 5, 6. 
According to the complaint, Neo Gen provides hospitals in various
states with screening services to detect disorders in newborns but
is being prevented by the defendants from doing so in
Massachusetts.
 The principal defendants named in the complaint as
currently amended are the University of Massachusetts, a not-for-
profit corporation linked to the state through governance and
financing, its New England Newborn Screening Program ("the
Screening Program"), and two individuals--Howard Koh and Ralph
Timperi--who are or were respectively the Commissioner of the
Massachusetts Department of Public Health and an Assistant
Commissioner responsible for laboratory testing. Several other
defendants were named in the original complaint but later dismissed
by consent. 
 The original complaint was filed on March 5, 1998, and
contained eleven counts; but it was thereafter amended and reduced
to two counts, the second of which was later voluntarily withdrawn. 
The remaining count (count I) is subcaptioned: "PLAINTIFF
CORPORATION VS. DEFENDANTS NENSP AND UMASS VIOLATION OF THE SHERMAN
ANTI-TRUST LAWS."; and it expressly charges the Screening Program
and University of Massachusetts, in concert with the Massachusetts
Department of Public Health, with monopolizing, attempting to
monopolize and/or conspiring to monopolize "newborn screening
services" in Massachusetts and surrounding states.
 Although there are some collateral allegations, the main
thrust of count I is an attack on the University of Massachusetts
for seeking and obtaining a monopoly in the provision of the
newborn screening services in Massachusetts. The only relief
sought by the complaint is injunctive relief, apart from attorneys'
fees, and the injunctive relief sought includes a request to bar
the Commissioner and Assistant Commissioner from issuing permanent
regulations that maintain the screening program's monopoly over the
provision of the testing services in question. The complaint
provides a history, which can be summarized briefly, as to how the
supposed monopoly came about.
 The Screening Program, a collection of personnel and a
laboratory, had at one time been a unit of the Department of Public
Health. At some point in the 1980s, the Screening Program was
taken over by Tufts University and later, beginning in 1997, by the
medical school of the University of Massachusetts. The Screening
Program currently operates, under a contract between the University
of Massachusetts and the Department of Public Health, to provide
screening for specified disorders of newborn infants. A blood
sample is taken by the hospital where the child is delivered and
submitted to the Screening Program for testing, and a charge is
paid by the hospital to the Screening Program.
 In the fall of 1997, Neo Gen set about trying to persuade 
Massachusetts hospitals to let Neo Gen screen their newborns. It
solicited hospitals in Massachusetts and purported to offer more
modern, comprehensive screening at half the fee charged by the
Screening Program. According to the complaint, the University of
Massachusetts and its Screening Program responded by seeking
adoption of regulations by the Department of Public Health that
would give the Screening Program a monopoly in the provision of
screening services in Massachusetts.
 The complaint charges that the Screening Program
"influenced" the Department of Public Health to issue emergency
regulations that required testing for nine diseases and required
that the blood samples be submitted to the Department itself. See
105 C.M.R. 270.000 et seq.. Also appended to the complaint is a
contract entered into between the Department of Public Health and
the University of Massachusetts requiring the latter to provide
newborn screening laboratory work, clinical follow-up and research
services. The proposed regulations were adopted on an emergency
basis in November 1997, accompanied by statements that the
Department of Public Health would thereafter study the possibility
of allowing other entities to perform the screening. 
 The defendants moved to dismiss the amended complaint as
barred by the Eleventh Amendment, asserting as well that the
complaint failed to state a claim under the federal antitrust laws
and was barred by various antitrust doctrines. In a decision
issued on December 3, 1998, the district court held that the only
claim remaining in the case was count I, that this count was
directed against the University of Massachusetts and the Screening
Program, and that both entities were arms of the state and were
entitled to dismissal under the Eleventh Amendment. This appeal
followed.
 Under the Eleventh Amendment, a state or an arm of the
state is normally immune from suits by citizens in federal court,
Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); see Chemerinsky,
Federal Jurisdiction 7.4, at 403 (3d ed. 1999), unless the state
waives its immunity, Idaho v. Coeur d'Alene Tribe of Idaho, 521
U.S. 261, 267 (1997), or Congress overrides that immunity as it may
do in limited situations, Seminole Tribe v. Florida, 517 U.S. 44,
57-68 (1996). Neo Gen has not argued either that there was any
waiver of Eleventh Amendment immunity by defendants or any
abrogation of that immunity by Congress.
 Whether and when state universities are arms of the state
for Eleventh Amendment purposes have long vexed the federal courts. 
The multi-part tests that we have used are not easy to apply, and,
confusingly, overlap but do not quite duplicate tests that
determine whether a university is an independent entity for
purposes of diversity jurisdiction. Cf. University of Rhode Island
v. A.W. Chesterton Co., 2 F.3d 1200, 1202-05 (1st Cir. 1993). A
number of decisions have held that individual state universities
are arms of the state for Eleventh Amendment purposes, but the
inquiry tends to turn on facts peculiar to each university, and
there are cases denying protection. See Chemerinsky, supra, 7.4,
at 407 & nn.33-34 (collecting cases).
 In its decision under review, the district court
explicitly found that the University in conducting the Screening
Program was "acting as an agency or arm of the Commonwealth of
Massachusetts." It rested this legal conclusion on a detailed
discussion of the University's mission, its governance, its
financial relationship to the state and similar matters. Its
conclusion that the University is an arm of the Commonwealth
accords with the view of another district court involving the
University of Massachusetts. Daniel v. American Board of Emergency
Medicine, 988 F. Supp. 127, 178-81 (W.D.N.Y. 1997).
 On this appeal, Neo Gen has effectively failed to dispute
the district court's holding that the University and its Screening
Program are covered by the Eleventh Amendment. Since that ruling
is at least colorable and certainly not plain error, cf. Beatty v.
Michael Business Machines Corp., 172 F.3d 117, 121 (1st Cir. 1999),
we treat the dismissal of the case against these two defendants as
conceded. However, Neo Gen argues that Koh and Timpari were also
intended defendants in count I and that despite the Eleventh
Amendment these state officials are subject to injunctive relief
under the doctrine of Ex Parte Young, 209 U.S. 123 (1908).
 Ex Parte Young is one of several major qualifications on
Eleventh Amendment immunity. Chemerinsky, supra, 7.5-7.7, at
411-46. Ignoring some refinements, the doctrine removes the
Eleventh Amendment bar where the private suit is directed not
against the state or a state agency eo nomine but instead against
state officials acting in violation of federal law and where (in
addition) retrospective damages or property transfers are not
sought for official acts. Coeur d'Alene Tribe, 521 U.S. at 269,
277-80; Strahan v. Coxe, 127 F.3d 155, 166-67 (1st Cir. 1997),
cert. denied, 119 S. Ct. 81 (1998); Chemerinsky, supra, at 7.5,
at 411-30. This exception is Neo Gen's main argument on this
appeal.
 The Commonwealth replies that the claims in count I were
asserted only against the University of Massachusetts and the
Screening Program and that no relief was sought under that count
against the two named state officers. That is certainly what the
district court thought, and its view is supported by the subcaption
of the count (quoted above), which referred to those institutional
defendants and no others. By contrast, count II, which was
voluntarily withdrawn, specifically mentions Koh and Timperi as
defendants in the corresponding subcaption.
 Neo Gen counters that state officials were named as
defendants in the complaint, that the Department of Public Health
itself is mentioned in count I, that complaints are liberally
construed, and that at worst it is entitled to leave to amend. The
latter claim fails since leave to amend was not requested in the
district court, but the construction of count I in its present form
is open to reasonable dispute. We think that the injunctive relief
against the two state officials is so clearly barred for a
substantive reason that we prefer to affirm on that ground rather
than because of a possible pleading error.
 It is quite true that Ex Parte Young avoids the Eleventh
Amendment defense where prospective injunctive relief, not
involving damages or property transfer, is sought against named
state officials for a violation of federal law. See Coeur d'Alene
Tribe, 521 U.S. at 276-77. Usually, such injunctions are sought to
require compliance with the Constitution; but the Ex Parte Young
doctrine is equally applicable to compel state officials to comply
with a valid federal statute that must be obeyed under the
Supremacy Clause of the Constitution. Id. at 273-77. Thus, if the
state officials were violating the Sherman Act, in principle the
Eleventh Amendment would not bar injunctive relief against them.
 The difficulty for Neo Gen is that it is clearly
established that the Sherman Act does not itself apply to state
action. In Parker v. Brown, 317 U.S. 341, 350-51 (1943), the
Supreme Court determined that Congress had not meant to require
states to comply with the Sherman Act. Accordingly, a state is
free to regulate, or act on its own behalf, in ways that are anti-
competitive and would not be permitted to a private individual. 
Id. This doctrine is so well settled that its rationale and
underpinnings are scarcely worth discussing. See I Areeda &
Hovenkamp, Antitrust Law, 221-222 (1997).
 No doubt the emergency regulations, coupled with the ten-
year renewable contract already described, create an effective
monopoly for the University of Massachusetts in conducting the
screening of Massachusetts newborns. By regulation, the blood must
be made available to the Department, and the Department has chosen
to contract with the University to do the testing. Although a
hospital could also choose to engage Neo Gen, no hospital is likely
to pay twice for the same service. But a regulation or purchase of
services made by the state is classic state action immunized from
the Sherman Act. Cf. Hoover v. Ronwin, 466 U.S. 558, 567-73
(1984); Tri-State Rubbish, Inc. v. Waste Management, Inc., 998 F.2d
1073, 1076 (1st Cir. 1993).
 Neo Gen mistakenly attempts to distinguish Parker v.
Brown and the long line of cases that have followed it by arguing
that the Massachusetts legislature did not "clearly articulate" a
purpose to supplant competition with monopoly. The cases on which
Neo Gen relies, such as City of Columbia v. Omni Outdoor
Advertising, Inc., 499 U.S. 365 (1991), and City of Lafayette v.
Louisiana Power & Light Co., 435 U.S. 389 (1978), do impose a
requirement of this kind (the details are not important here) where
the acts sought to be shielded under Parker v. Brown are those of
municipalities or other local public entities. But no such
requirement exists where the acts are those of the state itself. 
Hoover, 466 U.S. at 568.
 Whether executive branch action is that of the state is
a different issue. The Supreme Court has held that acts of the
state legislature or state supreme court are protected under
Parker, but it reserved decision as to whether state-level
executive branch departments or agencies are entitled to similar
treatment. Hoover, 466 U.S. at 568 n.17 (reserving question). 
However, both circuits that have squarely faced the issue have
extended Parker's ordinary protection to actions of the state
executive branch. We agree, with possible caveats that do not
affect the outcome in this case. 
 Broadly speaking, the Parker doctrine represents a
judgment by the Supreme Court that, in regulating anti-competitive
business conduct, Congress was not seeking to regulate the states
themselves; and "the states" include their executive branches quite
as much as their legislatures and their courts. The municipalities
have been given less protection under Parker on the stated ground
that technically speaking, they are not "the state," Lafayette, 435
U.S. at 412-13, while the status of state boards or commissions is
open to dispute, see Areeda, supra, 224; id. 212.2d at 141 &
n.48 (1992 Supp.). And there is still less of an analogy to
private carriers or utilities, operating under some measure of
state supervision, whose protection under Parker is even more
restricted. Southern Motor Carriers Rate Conference, Inc. v.
United States, 471 U.S. 48, 57-62 (1985).
 The question remains whether and to what extent a
plaintiff should be able to pierce the Parker defense on the ground
that the state official or agency was acting in excess of his (or
its) authority under state law. On the one hand, the Supreme Court
has made clear that the Eleventh Amendment is not to be avoided
under Ex Parte Young merely in order to enforce state law. 
Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 106
(1984). On the other hand, extreme cases can be imagined: suppose
a state executive official entered into an exclusive-dealing
contract for the state that would violate the principles of Tampa
Electric Co. v. Nashville Coal Co., 365 U.S. 320 (1961), if done by
a private party, and suppose further that the state legislature had
expressly banned such a contract.
 We need not resolve such conundrums here. Neo Gen argues
that the Massachusetts legislature did not expressly approve or
authorize the kind of regulation or contract involved in this case;
but we have rejected a "clear articulation" test as applied to the
state's executive branch, at least where a full-fledged department
is concerned. Given the Commonwealth statutes that authorize
testing, there is nothing extraordinary or unforeseeable about the
Department of Public Health's regulation requiring testing or its
decision to do the testing itself or through a chosen instrument.
Even if a patent lack of authority could ever be an exception to
Parker, it is certainly not so in a case of this kind.
 There are a scattering of other allegations in count I in
addition to the charge that the University of Massachusetts sought
and acquired a monopoly over newborn screening. These include
claims that the "defendants" fixed the price of services at $42 per
infant (whereas Neo Gen offered testing at $25), and that the
defendants "influenc[ed]" the adoption of the regulations. These
undeveloped allegations are not pursued in Neo Gen's brief and
deserve no further comment. King v. Town of Hanover, 116 F.3d 965,
970 (1st Cir. 1997).
 It may be, as Neo Gen charges, that the defendants'
actions reflect a cozy arrangement that gives newborns inferior
screening at higher cost and that everyone--except possibly the
Screening Program--would be better off if hospitals could contract
competitively for screening services, just as they procure drugs,
bandages, and other resources. The state, in turn, says that its
contract provides for extra research and follow-up that Neo Gen
fails to provide; such cross-subsidy arguments are traditional
defenses for monopoly but not invariably without merit. At bottom,
this is a policy matter to be resolved by the Commonwealth. 
 Affirmed.