# Jurisdiction of Integrity Committee When Inspector General Leaves Office After Referral of Allegations

The Integrity Committee has authority to review, refer for investigation, and report findings with respect to administrative allegations of wrongdoing made against a former Inspector General when the Committee receives the allegations during the subject's tenure as Inspector General, even if the subject later leaves office.

September 5, 2006

MEMORANDUM OPINION FOR THE CHAIRMAN OF THE
INTEGRITY COMMITTEE OF THE PRESIDENT'S COUNCIL ON
INTEGRITY AND EFFICIENCY

You have asked us whether the Integrity Committee of the President's Council on Integrity and Efficiency ("Integrity Committee" or "Committee") has authority to review, refer for investigation, and report findings with respect to administrative allegations of wrongdoing made against a former Inspector General ("IG"), when the Committee received the allegations during the subject's tenure as Inspector General and the allegations relate to actions taken while in office. *See* Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Chris Swecker, Chairman, Integrity Committee, President's Council on Integrity and Efficiency at 3 (Oct. 24, 2005) ("Referral Letter"). We conclude that the Committee has continuing authority with respect to allegations the Committee received while the subject of the allegations was serving as Inspector General, even if the subject leaves office after receipt of those allegations.

## I.

The President's Council on Integrity and Efficiency ("Council" or "PCIE"), as established by Executive Order 12301 in March 1981, consisted of specified Inspectors General and other federal officials. 3 C.F.R. 144 (1981 Comp.). In a May 1992 executive order, the President expanded the membership of the Council to include all presidentially appointed Inspectors General and other government officials. Exec. Order No. 12805, 3 C.F.R. 299 (1992 Comp.). In the same order, the President established the parallel Executive Council on Integrity and Efficiency ("ECIE"), which includes all "civilian statutory Inspectors General not represented on the PCIE." *Id.* § 2(b)(2). The Deputy Director for Management of the Office of Management and Budget is the Chairperson of both groups. Originally, the PCIE and ECIE were charged with developing plans to help eliminate waste and fraud in governmental programs, assisting in the establishment of a corps of effective Inspector General staff members, and related matters. Exec. Order No. 12301, § 2; Exec. Order No. 12805, § 3. Later, the Chairperson of the

PCIE and ECIE established the Integrity Committee as a component of the two councils composed of certain Council members. Referral Letter at 2.

In 1996, the President expanded the authority and mandate of the Councils to undertake investigative functions through the Integrity Committee. Exec. Order No. 12993, 3 C.F.R. 171 (1996 Comp.). Executive Order 12993 authorizes the Integrity Committee to address certain "administrative" (i.e., non-criminal) allegations[1] against Inspectors General, as well as administrative allegations against staff members of an Office of Inspector General ("OIG") whose investigation might pose a conflict of interest for the OIG in which they serve. *Id.* pmbl. The order directs that the Integrity Committee, "[t]o the extent permitted by law, and in accordance with this order, . . . shall receive, review, and refer for investigation allegations of wrongdoing against IGs and certain staff members of the OIGs." *Id.* § 1(a). The order directs that the Integrity Committee "shall review all allegations of wrongdoing it receives against an IG who is a member of the PCIE or ECIE, or against a staff member of an OIG acting with the knowledge of the IG or when the allegation against the staff person is related to an allegation against the IG." *Id.* § 2(a).[2] Once an allegation is received, the Integrity Committee is required to "determine if there is a substantial likelihood that the allegation . . . discloses a violation of any law, rule or regulation, or gross mismanagement, gross waste of funds or abuse of authority." *Id.* § 2(c). If the Integrity Committee determines that an allegation "does not warrant further action, it shall close the matter" and notify the Chairperson of the PCIE/ECIE of its determination. *Id.* § 2(d). If the Integrity Committee determines that the allegation meets that standard, however, it must take one of two actions. Ordinarily, the Committee "shall refer the allegation to the agency of the executive branch with appropriate jurisdiction over the matter." *Id.* § 2(c). If, however, "a potentially meritorious administrative allegation cannot be referred to an agency of the executive branch with appropriate jurisdiction over the matter, the Integrity Committee shall certify the matter to its Chair, who shall cause a thorough and timely investigation of the allegation to be conducted in accordance with this order." *Id.*

---

[1] The Integrity Committee has defined "administrative misconduct" to mean "noncriminal misconduct, or misconduct the Public Integrity Section declines to pursue on a criminal basis, that evidences a violation of any law, rule, or regulation; or gross mismanagement; gross waste of funds; or abuse of authority, in the exercise of official duties or while acting under color of office." Policy and Procedures for Exercising the Authority of the Integrity Committee of the President's Council on Integrity and Efficiency at 7 (Nov. 5, 2004) ("Policy and Procedures").

[2] The order also directs Inspectors General to "refer" administrative allegations against "senior staff member[s]" to the Committee when "review of the substance of the allegation cannot be assigned to an agency of the executive branch with appropriate jurisdiction over the matter" and the Inspector General "determines that an objective internal investigation, or the appearance thereof, is not feasible." Exec. Order No. 12993, § 2(b).

Executive Order 12993 authorizes the Director of the FBI, through his designee, who serves as Chairperson of the Integrity Committee, to "consider" administrative allegations and "where appropriate, to investigate" them. At the request of the Chairperson, federal agencies may detail personnel to the Committee, including personnel from various OIGs, who will be "subject to the control and direction of the Chairperson, to conduct an investigation." *Id.* § 3(b). At the conclusion of the investigation, a report is to be issued to the Integrity Committee (either by the Chairperson or, if the matter was referred for investigation to an agency, the head of that agency). *Id.* § 4. Reflecting the fact that an Inspector General is supervised by the head of the agency in which he serves, *see* 5 U.S.C. app., Inspector General ("IG") Act § 3(a) (2000 & Supp. III 2003), the Chairperson of the PCIE/ECIE may disseminate such a report to the head of the agency employing the subject for possible adverse action. Exec. Order No. 12993, § 4(d). The agency head must then certify to the Chairperson that he has personally reviewed the report and indicate what action (if any) has been taken and what further action is being considered. *Id.*

You have informed us that the Integrity Committee received allegations regarding a sitting Inspector General and initiated the procedures contemplated by Executive Order 12993. Because the Committee has jurisdiction over only non-criminal allegations, the Committee, following its written procedures, first referred the allegations to the Public Integrity Section of the Department of Justice's Criminal Division. The Public Integrity Section declined to pursue a criminal investigation and returned the matter to the Committee.[3] The Committee then determined that there was a "substantial likelihood that the allegations disclose a gross waste of funds or abuse of authority." Referral Letter at 3. Based on that determination, the Integrity Committee referred the matter for investigation by the Inspector General of another agency. Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Chris Swecker, Chairman, Integrity Committee, President's Council on Integrity & Efficiency at 1 (Dec. 19, 2005).[4]

---

[3] The Integrity Committee's written procedures establish this initial referral procedure in order to sort criminal allegations from the non-criminal matters over which the Committee has jurisdiction. *See* Policy and Procedures at 6–7. If the Department of Justice declines prosecution, the Committee makes a determination regarding whether further investigation is warranted pursuant to section 2(c) of the Order. *See id.*

[4] A few weeks after being notified that the Integrity Committee had referred the allegations to another agency's IG, the subject of the investigation formally requested that the Integrity Committee refer the matter to a different agency's IG for investigation. The Committee granted that request shortly after the subject of the investigation left office. E-mail for John P. Elwood, Deputy Assistant Attorney General, Office of Legal Counsel, from William Corcoran, Public Integrity Section, Criminal Division (Apr. 17, 2006).

Nearly three months after the Committee made its "substantial likelihood" determination and referred the matter for investigation, the Inspector General whose conduct is at issue left office. *See* E-mail for John P. Elwood, Deputy Assistant Attorney General, Office of Legal Counsel, from William Corcoran, Public Integrity Section, Criminal Division (Mar. 21, 2006) ("Corcoran E-mail"). The Committee has asked this Office for an opinion on whether it may continue to pursue administrative allegations against the former Inspector General based on allegations of wrongdoing that allegedly occurred (and that the Committee received) while the subject of the investigation was in office.[5] Referral Letter at 3.

## II.

The Constitution vests the President with "[t]he executive Power" of the United States, U.S. Const. art. II, § 1, and enjoins him to "take Care that the Laws be faithfully executed." *Id.* § 3. To assist the President in the discharge of his duties, the Constitution authorizes the President to "nominate, and by and with the Advice and Consent of the Senate, [to] appoint . . . Officers of the United States," and authorizes the President, acting alone, to appoint "such inferior Officers," as Congress specifies. *Id.* § 2. Although the Constitution is silent about the President's authority to remove those whom he has appointed, the Supreme Court has held that ordinarily, "the power of appointment carrie[s] with it the power of removal." *Myers v. United States*, 272 U.S. 52, 119 (1926); *see also id.* at 164 (noting President's "general administrative control of those executing the laws"); *Morrison v. Olson*, 487 U.S. 654, 692 (1988) (explaining that the President, at least to some degree, must be able "to control or supervise" Executive Branch personnel in order to discharge his constitutional duty to take care that the laws are faithfully executed). "The reason for the principle is that those in charge of and responsible for administering functions of government who select their executive subordinates need in meeting their responsibility to have the power to remove those whom they appoint." *Myers*, 272 U.S. at 119. As the Court has explained, "when the grant of the executive power is enforced by the express mandate to take care that the laws be faithfully executed, it emphasizes the necessity for including within the executive power as conferred the exclusive power of removal." *Id.* at 122.

By the same token, the Constitution gives the President the "inherent authority to supervise and direct the performance of his appointees in office, and to investigate allegations of possible misconduct related to that performance." *Procedures for Investigating Allegations Concerning Senior Administration Officials*, 6 Op.

---

[5] This memorandum does not address whether the Integrity Committee would have authority to act when an IG leaves office before the Committee receives any allegations about that person's conduct in office.

O.L.C. 626, 628 (1982) ("*Senior Administration Officials*"). Even in the absence of any congressional authorization, therefore, the President may investigate allegations of misconduct and other lesser forms of inefficiency or infidelity by Executive Branch officers and employees. *See* Memorandum for the Attorney General, from Daniel L. Koffsky, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Statutory Authority of the Federal Bureau of Investigation to Undertake Non-Criminal Investigations of the Inspectors General* at 3 (May 26, 1993) ("Koffsky Memorandum"). Because "each Inspector General ultimately is responsible to the President" and "each is subject to removal by the President," *id.* at 4 (citing 5 U.S.C. app., IG Act § 3(b)), "the President may take the actions necessary to investigate allegations of non-criminal misconduct by Inspectors General as an incident of his authority as head of the Executive Branch." *Id.*

The President's authority to "oversee the performance of . . . appointees in office"—and specifically, the authority to investigate them—may be delegated. *Senior Administration Officials*, 6 Op. O.L.C. at 631 & n.13. *See generally* Memorandum from Office of Legal Counsel, *Re: President's Authority to Delegate Functions* at 3 (Jan. 24, 1980) (concluding that the President generally has the inherent authority to delegate the performance of functions vested in him to the extent "reasonably necessary in executing the express powers granted to him under the Constitution and Laws of the United States for the proper and efficient administration of the executive branch of the government"). Executive Order 12993 delegates to the Integrity Committee part of the President's inherent authority, the power to receive and investigate allegations of non-criminal wrongdoing by Inspectors General (and, under certain circumstances, OIG staff members). While the authority to investigate Executive Branch officials presumably can be created or supplemented by statute, *see generally Morrison v. Olson*, 487 U.S. at 695–96, we are aware of no statute investing the Integrity Committee with such authority.[6] Rather, the Integrity Committee's investigative power is

---

[6] The Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat. 1001 (codified at 5 U.S.C. app. (2000 & Supp. III 2003)) ("IG Act"), does not vest the Integrity Committee with authority to conduct investigations; indeed, Inspectors General and OIG personnel have only limited statutory authority to investigate allegations outside their agencies on a detail basis. We noted in our 1982 opinion that "the Inspector General Act authorizes an Inspector General and his staff to conduct investigations into allegations of misconduct only when those allegations involve fraud and abuse in the programs and operations of the particular agency or department in which the Office is located." *Senior Administration Officials*, 6 Op. O.L.C. at 629. *See generally* 5 U.S.C. app., IG Act § 4(a). We explained that "funds appropriated for the activities of an Office of Inspector General in one agency would ordinarily not be available to conduct an investigation into allegations of misconduct by personnel in another agency." 6 Op. O.L.C. at 629. Thus, we concluded that "[t]here is no authority under the Inspector General Act, or under any appropriations act of which we are aware, for an Assistant Inspector General for Investigations, or any member of an Inspector General's staff, to conduct investigations which do not 'relate to' the 'programs and operations' of the agency in which he is employed." *Id.* at 629 n.9. We noted, however, that personnel in one agency's Office of Inspector General "might lawfully be directed by his

entirely a product of Executive Order 12993. It therefore has only such authority to investigate that is granted by that order. *See Senior Administration Officials*, 6 Op. O.L.C. at 628–29.

Soon after the creation of the President's Council on Integrity and Efficiency, this Office made clear that (in the absence of a legislative enactment) a presidential delegation was the exclusive potential source of authority to investigate Inspectors General and OIG staff members. *See id.* at 628–30. In 1982, this Office evaluated a PCIE proposal to have "non-criminal allegations" of wrongdoing by Inspectors General referred to the PCIE for initial consideration and potential investigation. *Id.* at 627. We concluded that, while one provision of the executive order creating the PCIE "might be interpreted to authorize the Council to develop procedures to investigate misconduct by Inspectors General," *id.* at 629 n.7, that order had not provided to the PCIE any explicit authority to coordinate or to conduct investigations of Inspectors General. *See* Exec. Order No. 12301 (authorizing the PCIE to develop policy proposals for streamlining government and eliminating waste, but not mentioning the power to investigate). We could not "construe [the order] . . . to bestow authority on the Council actually to conduct such investigations," because "[s]uch a delegation of substantive presidential authority to an agency *not otherwise authorized to engage in such activities* would, in our view, have to be explicit." 6 Op. O.L.C. at 629 n.7 (emphasis added). Because the executive order was not explicit, we concluded that it "does not accomplish such a delegation." *Id.* at 628–29. Since then, the President explicitly delegated some investigatory authority to the Committee in Executive Order 12993, and so it is no longer the case that the Committee is "not otherwise authorized to engage in such activities." *Id.* at 629 n.7.

The sole mechanism that Executive Order 12993 provides for the Integrity Committee to obtain jurisdiction over allegations is through the referral of those allegations to the Committee under section 2 of that order. It states:

> The Integrity Committee shall review all allegations of wrongdoing it receives against an IG who is a member of the PCIE or ECIE or against a staff member of an OIG acting with the knowledge of the IG or when the allegation against the staff person is related to an al-

---

own agency to investigate . . . allegations against another Inspector General on a detail basis." *Id.* at 629–30 & nn. 10–11.

Nor does the FBI have statutory authority to conduct investigations of administrative allegations. We concluded in a 1993 opinion that 28 U.S.C. § 533, which authorizes the Attorney General to direct the FBI to "conduct such other investigations regarding official matters under the control of the Department of Justice . . . as may be directed by the Attorney General," did not permit him "to direct the FBI to conduct investigations of non-criminal misconduct by the Inspectors General." Koffsky Memorandum at 1. We noted, however, that "the President may direct the FBI to undertake investigations into non-criminal allegations against the Inspectors General." *Id.* at 5.

legation against the IG, except that where an allegation concerns a member of the Integrity Committee, that member shall recuse himself from consideration of the matter.

Exec. Order No. 12993, § 2(a).

The language of section 2(a) does not itself clearly indicate whether, for the Integrity Committee to have jurisdiction, the IG must be a member of the PCIE or ECIE only at the time allegations are received or whether the IG must still be serving at some later point when the allegations are reviewed for the Integrity Committee to exercise jurisdiction over allegations. Other language in section 2 is more illuminating. Section 2(c) states that "[t]he Integrity Committee *shall determine* if there is a substantial likelihood that the allegation, *referred to it* under paragraph[] (a) . . . of this section, discloses a violation of any law" or other misconduct or abuse "and *shall refer* the allegation to the agency of the executive branch with appropriate jurisdiction over the matter." (Emphases added.) Allegations that the Integrity Committee receives against a then-sitting IG are properly understood to be "referred to" it when they are received. *See The American Heritage College Dictionary* 1146–47 (3d ed. 1997) ("refer" means, among other things, "[t]o submit (a matter in dispute) to an authority for arbitration, decision, or examination"); *Webster's Third New International Dictionary* 1907 (1993) ("to send or direct for treatment, aid, information, decision"). The mandatory language of section 2(c) indicates that the Integrity Committee's obligation to make a determination of probable merit—and to refer potentially meritorious allegations for investigation—arises when an allegation against a then-sitting IG is "referred to it under paragraph[] (a)." The unqualified, expansive, and mandatory language of the first half of section 2(a) ("*shall* review *all* allegations of wrongdoing it receives"), together with the language of section 2(c), thus indicates that the relevant decision point is the time of receipt. Executive Order 12993 is thus most naturally read to permit the Integrity Committee to retain jurisdiction over allegations against an IG who is a member of the PCIE or ECIE at the time of the allegations' receipt, even if he leaves office soon afterwards. In addition, sections 2(c) and 2(d) explicitly establish a mechanism for disposing of allegations that the Integrity Committee determines not to be "potentially meritorious"; the failure explicitly to provide for disposing of allegations involving a subject who is no longer a member of the PCIE or ECIE could reasonably be interpreted as an indication that the Integrity Committee is obligated to assess the likely merits of all allegations that it properly receives under section 2(a).

There is also another basis for concluding that the Integrity Committee retains jurisdiction in this matter. We understand that the Inspector General who is the subject of the Committee's pending investigation remained a member of the PCIE for nearly three months after the Committee made its determination that the allegations against him likely had merit under section 2(c) of the order and referred them for investigation. *See* Corcoran E-mail. The order provides without

qualification that if the Integrity Committee determines there is a "substantial likelihood that the allegation" has merit, it "*shall refer* the allegation to the agency of the executive branch with appropriate jurisdiction over the matter." Exec. Order No. 12993, § 2(c) (emphasis added). Thus, under the mandatory language of the order, once the Integrity Committee determined that there was a "substantial likelihood that the allegation[s]" against the then-sitting member of the PCIE had merit, the Committee was authorized—indeed, obligated—to refer the allegations for investigation. The remaining terms of the delegation likewise speak in mandatory and unqualified terms, directing specific actions with respect to any allegations the Committee has referred for investigation. *See, e.g.*, *id.* § 4(a) ("The report containing the results of the investigation conducted under the supervision of the Chair of the Integrity Committee shall be provided to the members of the Integrity Committee for consideration."), *id.* § 4(b) ("the head of an agency" receiving allegations for investigation "shall provide a report to the Integrity Committee"), *id.* § 4(c) ("The Integrity Committee shall assess the report received under [section 4](a) or (b) . . . and determine whether the results require forwarding of the report, with Integrity Committee recommendations, to the Chairperson of the PCIE/ECIE for resolution."), *id.* § 4(e) ("The Chairperson of the PCIE/ECIE shall report to the Integrity Committee the final disposition of the matter."). The language of the order does not suggest that a potentially meritorious allegation would not be investigated because the subject of the allegation departs after the Committee has made its determination of likely merit and referred the matter for investigation. Accordingly, we conclude that an Inspector General's departure after a determination of likely merit and referral under section 2(c) does not divest the Committee of authority over pending allegations.[7]

Some provisions of Executive Order 12993 might be read to suggest that, even if the Integrity Committee properly received allegations against an Inspector General then serving on the PCIE, it loses the authority to initiate an investigation upon the subject's departure from that post. For example, section 1(a) of the order provides that "the Integrity Committee shall receive, review, and refer for investigation allegations of wrongdoing against IGs"; section 3(a) likewise provides that the Chairperson of the Integrity Committee "is authorized and directed to consider and, where appropriate, to investigate administrative allega-

---

[7] Although it presents a closer question, for similar reasons, we believe that the Integrity Committee would have authority to receive new allegations after an Inspector General has left office, if those allegations are related to matters that the Committee already had properly received under section 2(a), or if they are related to allegations for which there already has been a determination of probable merit under section 2(c). Executive Order 12993 contemplates that an investigation will be conducted of potentially meritorious allegations the Committee has properly received. *Id.* §§ 1(a), 2(b)(2), 2(c). The order appears to contemplate that any such investigation will be "thorough and timely." *Id.* § 2(c). It is reasonable to conclude that a "thorough" investigation would consider new allegations related to the original referral that came to the attention of investigators during the course of their inquiry.

tions against the IGs," and the term "the IGs" might be read to include only current Inspectors General. However, the term "IGs," when not used in conjunction with language suggesting the term applies only to incumbents, easily could be read to include a person who was being investigated for actions taken while serving as Inspector General, even if he had since left that post. *See, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341–45 (1997) (concluding that term "employees" in 42 U.S.C. § 2000e-3(a) includes former employees); *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 6 (1st Cir. 1998) (holding that agency reasonably concluded that term "employees" in Family and Medical Leave Act includes former employees; "absent an express 'temporal qualifier,' such as 'current,' Congress' use of the word 'employees' does not inherently exclude former and prospective employees") (internal citation omitted); *Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 330–31 (D.C. Cir. 1991) (holding that term "employees" in Age Discrimination in Employment Act includes former employees). Although we do not give this factor determinative weight, the conclusion that the Integrity Committee could continue to oversee an investigation after receipt of allegations (and after a determination of probable merit) is consistent with the stated purposes of Executive Order 12993, which include "to ensure that administrative allegations against IGs . . . are appropriately and expeditiously investigated and resolved." *Id.* pmbl. If the Committee were required to relinquish jurisdiction over a matter even after the Committee had "review[ed]" the allegations, *id.* § 2(a), and "determine[d]" that that there is a substantial likelihood that they have merit, *id.* § 2(c), the subject of an investigation could both potentially delay the investigation and affect the choice of investigating authority through the timing of his resignation. Unnecessary cost and delays could result if another investigative authority were required to begin the investigation anew after substantial progress already had been made under the auspices of the Integrity Committee. Although, as noted below, conflict of interest concerns may be obviated by the Inspector General's departure, under such circumstances, interests in efficiency would counsel in favor of the Committee's retaining jurisdiction over the matter until its conclusion.

Other provisions of Executive Order 12993 also might be read to permit the Committee to exercise jurisdiction only over investigations involving sitting IGs. Section 4(d) provides for an agency head to supply certain information "[w]here the Chairperson of the PCIE/ECIE determines that dissemination of the report to the head of the subject's employing agency or entity is appropriate." Section 4(e) provides that "[t]he Chairperson of the PCIE/ECIE shall report to the Integrity Committee the final disposition of the matter, including what action, if any, has been or is to be taken by the head of the subject's employing agency or entity." One might argue that the references to "the head of the subject's employing agency or entity" suggest that the order contemplates that the subject of the investigation would still be serving in the government. We do not believe those provisions provide sufficient basis for limiting the scope of the Committee's authority to persons still serving as Inspectors General. Neither of those two

provisions purports to apply in every case; one simply provides for dissemination of a report to the head of the subject's employing agency *if* doing so "is appropriate," and the other simply requires a report of what action "if any" has been or is to be taken by the head of that agency. Thus, neither provision suggests that in all instances the person being investigated must still be employed by a government agency for the investigation to go forward.

While the departure of an Inspector General after allegations are referred does not affect the authority of the Integrity Committee to oversee the investigation, it very well may affect decisions that the Committee makes with respect to the investigation. For example, if the Committee determines "there is a substantial likelihood that" an allegation it has received has merit, it is required to "refer the allegation to the agency of the executive branch with appropriate jurisdiction over the matter." Exec. Order No. 12993, § 2(c). The Inspector General's office where the subject served may have been disqualified from being the "appropriate jurisdiction" to receive the investigation while the subject was in office. The departure of the Inspector General who is the subject of the investigation may well remove that disability so that "the agency of the executive branch with appropriate jurisdiction over the matter," *id.*, is the agency where the subject previously served as Inspector General. Which agency or agencies may have "appropriate jurisdiction" over the current investigation is not a question presented by your request, however, and so we do not resolve the issue here.

### III.

For the reasons discussed above, we conclude that under Executive Order 12993, the Integrity Committee has authority to pursue allegations that it receives against an incumbent Inspector General, even if the subject of the investigation then leaves office.

JOHN P. ELWOOD
*Deputy Assistant Attorney General*
*Office of Legal Counsel*